**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **R.C. OLMSTEAD, INC.** ) | **CASE NO:  5:08CV0234** |
| ) | |
| Plaintiff ) | **JUDGE SARA LIOI** |
| ) | |
| v. ) | |
| ) | |
| **CU INTERFACE, LLC, et al.** ) | |
| ) | |
| Defendants ) | |

**PLAINTIFF R.C. OLMSTEAD, INC.'S MEMORANDUM IN
OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Defendants, in filing for summary judgment, bore the burden to prove that there are no issues material fact and that they are entitled the judgment as a matter of law.  In support of their Motion, Defendants rely upon two lengthy self-serving affidavits.  The affidavits of Thomas Burkhardt and Jason Akin merely constitute unsupported legal arguments reduced to enumerated paragraphs.  Defendants' motion is conclusory in nature and fails to address the lengthy record in this case; it fails to meet the burden of Rule 56.

To avoid summary judgment, Plaintiff need only demonstrate the existence of evidence sufficient for it to prove the elements of its claims to the jury.  Defendants' Motion ignores inconvenient facts and relies upon the Court to infer that Defendants' acted lawfully and with good motives.  However, Rule 56 requires that all reasonable inferences be drawn in favor of the non-moving party in this case RCO.  Given the numerous disputed facts and legal arguments at issue and the Sixth Circuit's admonition to grant summary judgment of cases of this nature "sparingly," Defendants' Joint Motion should be denied.

**II.     RELEVANT FACTS**

RCO has previously provided the Court with a substantial factual statement of this case. As the Court is well-familiar with the facts of this case, RCO will not restate those facts herein. RCO incorporates by reference the full factual statement provided to Court in Plaintiff's Motion for Partial Summary Judgment. (Doc. 100). Where appropriate to support its arguments, RCO has included citations to specific facts contained in the record establishing the existence of issues of material fact.

**III.    ARGUMENT**

    **A.     Standard of Review**

In a copyright infringement cases, granting summary judgment, particularly in favor of a defendant, is a practice to be used sparingly. Kohus v. Mariol, 328 F. 3d 848, 853 (6th Cir. 2003). Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323.

In ruling upon a motion for summary judgment, the Court must draw all inferences and construe the evidence in the light most favorable to the nonmoving party. Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 150 (6th Cir.1995). Accordingly, to avoid summary judgment,

Plaintiff must merely demonstrate that there is sufficient evidence upon which a jury could find in its favor. For the reasons described below, there are genuine issues of material fact that preclude the granting of summary judgment in favor of Defendants.

### B. Defendants Have Withheld and Destroyed Key Evidence.

The parties have already fully briefed Plaintiff's Motion for Summary Judgment on its spoliation claim and CSE's Cross- Motion on that same claim. As is explained more fully in Plaintiff's prior submissions to this Court, Defendant's willful destruction of evidence has disrupted RCO's ability to prove its case. In their Joint Motion for Summary Judgment, Defendants seek to take advantage of the willful act of spoliation, by citing the absence of certain evidence from the record. Certainly, to grant summary judgment to Defendants in the face of this spoliation claim based upon the absence of evidence –evidence CSE destroyed – would be to reward this conduct.

In addition to destroying evidence, Defendants have denied access to a witness whose testimony will support some of Plaintiff's claims. Defendants' Joint Motion contends there is an absence of evidence of similarity between the parties' software products. At the same time they make this representation to the Court, they have attempted to deny Plaintiff the ability to depose CSE's own expert, Craig Minch. As conceded by defense counsel, Minch's testimony would confirm certain similarities between the software products. CSE moved to Quash the Subpoena issued to Minch because, as he is a defense witness, it would be unfair for his testimony to be used in support of Plaintiff's case. Plaintiff has opposed this motion and has filed a Motion pursuant to Rule 56(f). After obtaining Minch's testimony, Plaintiff will respond fully to Defendants' Joint Motion on the copyright claims to which Minch's testimony is relevant.

### C. **Defendants Are Not Entitled to Summary Judgment on the Copyright and Breach of Contract Claims.**

RCO's claims of breach of contract and copyright infringement are related. CSE operated the RCO software at its credit union pursuant to a License Agreement with RCO. Kambeitz Aff. at ¶ 3, Ex. 1. That License permitted CSE to operate the RCO software to perform the business of its credit union. The License did not authorize CSE to share the RCO software with third parties, such as CUI. Kambeitz Aff. at ¶ 7. CUI concedes that it never entered into a license agreement or any other agreement with RCO. Akin Aff. at ¶ 4. CSE admittedly provided RCO's competitor, CUI, and its programmers with unlimited use of the RCO software, during the time CUI was developing a competing product. In doing so, CSE breached its contract with RCO. Although Defendants' Motion contends that CSE's conduct was permitted by the contract, CSE has not moved for summary judgment on this aspect of RCO's breach of contract claim.

#### 1. **CSE Breached Its Contract With RCO.**

CSE's breach of the License Agreement with RCO constitutes a separate claim and also supports the copyright infringement claims. First, RCO licensed only CSE to use the RCO software. See Affidavit of Stephen J. Kambeitz at ¶ 7 (hereinafter "Kambeitz Aff. at ¶ ___.").[1] The contract also states that RCO retains ownership of the software. Kambeitz Aff. at Ex. 1. Defendants argue that the contract does not explicitly prohibit CSE from distributing the RCO software to third parties.[2] RCO has already presented evidence to the Court that CSE breached the terms of the License Agreement by giving an RCO competitor access to RCO software for the purpose of developing a competing product. Kambeitz Aff. at ¶ 7.

---

[1] The Affidavit of Stephen J. Kambeitz is attached to Plaintiff's Motion for Partial Summary Judgment as Exhibit A. (Doc. 100).
[2] As will be discussed below, the RCO software is copyrighted. With that protection, comes a legal prohibition on copying without the authority of the copyright holder.

In addition to the express terms of the contract, RCO's contract with CSE contained an implied duty of good faith and fair dealing, which CSE violated. SAS Institute, Inc. S & H Computer Systems, Inc., 605 F. Supp. 816, 827-28 (M.D. Tenn. 1985)(applying implied duty in context of software license agreement). In the case of a software license, the duty "requires the licensee to exercise good faith in the performance thereof and to do nothing whatsoever that would injure or destroy the value of the copyright to the licensor." Id. (citing County of Ventura v. Blackburn, 363 F. 2d 515, 518-22 (9th Cir. 1966)). In SAS Institute, the Court found that the duty of good faith and fair dealing prohibited a software licensee from using the licensor's software to produce a similar software product. Id. at 828.

In this case, CSE was party to a license agreement with RCO. They were accordingly bound by the duty of good faith and fair dealing not to use the licensed software to aid a competitor in creating a competing data processing system. That is exactly what it did. Furthermore, CSE concealed its conduct and intentions from RCO and negotiated an extension of the license agreement after entering into its development agreement with CUI. See Plaintiff's Motion for Partial Summary Judgment at pp. 12-14. Certainly there is a genuine issue of fact as to whether CSE acted in good faith.

Moreover, RCO's contract with CSE clearly states that CSE would not own the RCO software; ownership would remain with RCO. Kambeitz Aff. at ¶ 2. Absent ownership, CSE would not have the right to transfer the software to a third party, such as CUI. Like RCO's contract, CUI's contract with its customers states that CUI retains ownership of the CUDP software. CUI identified this language – stating that CUI owns its software – as language that prohibits a CUI customer from giving third parties access to the CUI software. Akin Dep. II at 84, 85, ln 17-18.

5

CSE breached its obligations under the license agreement when it shared RCO's software with third parties – their codefendants. Given these facts, CSE cannot obtain summary judgment on this aspect of RCO's breach of contract claim.

### 2. Defendants' Admitting to "Copying" Software in Violation of RCO License Agreement Constitutes Copyright Infringement.

Defendants' Motion does not dispute RCO's ownership of a valid, registered copyright in the RCO-1 software. Accordingly, to avoid summary judgment on its copyright claims, RCO must simply demonstrate an issue of fact on the question – addressed above – of whether CSE was authorized under the License agreement to "copy" RCO's software for use by a third party.

CUI never had any agreement with RCO. Affidavit of Jason Akin at ¶ 4 (hereinafter "Akin Aff. at ¶ ___.")[3] CUI further admittedly ran unlicensed copies of the RCO-1 software on CUI's computers in their development office. Akin Dep. I 65-66.[4] Simply by running these unlicensed copies of RCO-1 CUI infringed on RCO's copyright.[5] See Thoroughbred Software Intl. v. Dice Corp., 488 F. 3d 352, 357 (6th Cir. 2007)(defendant's use of copyrighted software that exceeded the scope of the license agreement constituted copyright infringement); AGT Intl., Inc. v. Level Three Communications, LLC., 2002 WL 31409879, at *4 (S.D. Ohio July 29, 2002)(use of a copyrighted software product absent a license constitutes "copying" prohibited by the Copyright Act.). In a case similar to this, the court held that running unauthorized copies of a copyrighted computer program in a manner or for a purpose not authorized by a license agreement constituted infringement. S & H Computer Systems, Inc. v. SAS Institute, Inc., 568 F.Supp. 416, 422 (D.C. Tenn. 1983).

---

[3] The Affidavit of Jason Akin is attached as an Exhibit to Defendants' Motion for Summary Judgment.
[4] Cited to portions of the deposition of Jason Akin are attached as Exhibit D to Plaintiff's Partial Motion for Summary Judgment.
[5] CSE is also contributorily liable as they knowingly facilitated and have subsequently endorsed CUI's actions.

CSE also admittedly facilitated CUI's infringement by giving CUI access to the RCO server stored at CSE.  Akin Dep. I at 65-66.  The only defense to this admitted conduct would be the existence of a license authorizing Defendants to do what they did.  AGT Intl., Inc., 2002 WL 31409879, at *4 (citing Worldwide Church of God v. Philadelphia Church of God, 227 F. 3d 1110, 1114 (9th Cir. 2000)).

Defendants suggest that the license agreement somehow authorized CSE to distribute its software to CUI, a competitor of RCO's, because the agreement contemplated that CSE might retain a third party vendor to maintain its PC network and to provide terminal emulation software.  This self-serving argument is contradicted by the record.  CSE was not authorized to issue usernames and passwords to the RCO system and CUI would not have needed access to the RCO software in order to maintain CSE's PC network and to provide terminal emulation software.  See Radcliff Affidavit at ¶ 6.[6]

The testimony of Defendant Thomas Burkhardt is telling on this point.  Burkhardt, acting as CUI, provided the terminal emulation software and technical support to CSE starting in 2000 or 2001.  Over the four or five years before CSE switched to the CUI software, Burkhardt continued to provide these services on behalf of CUI.  Burkhardt testified that he *never needed access to the RCO system while providing these services*.  Deposition of Thomas Burkhardt at 110-111 (hereinafter "Burkhardt Dep. at ___.")[7].  During this time, when an issue arose with the RCO system at CSE that required access to the RCO system, Burkhardt would contact RCO's support employees and RCO's own employees would remotely log in to the RCO server at CSE to make the fix.  Burkhardt Dep. at 109-110.  Accordingly, Burkhardt's testimony confirms that CUI's terminal emulation work could be and was performed without access to the RCO system.

---

[6] The Affidavit of Don Radcliff is attached to Plaintiff's Motion for Summary Judgment as Exhibit B.
[7] Cited to pages from the Deposition of Thomas Burkhardt are attached hereto as Exhibit A.

CSE did not issue usernames and passwords to CUI until they began to develop their own software product. At that time, CSE gave access to Jason Akin, CUI's programmer. Akin Dep. I at 65-66. Burkhardt continued to provide the technical support and terminal emulation services but was never issued a password by CSE. Burkhardt Dep. at 110-111. CSE gave CUI's programmers access to the RCO system to further their development efforts. Given that issues of fact remain as to whether CSE breached the License Agreement and the above-described evidence, a reasonable jury could conclude that Defendants used the RCO software in a manner inconsistent with CSE's License Agreement, summary judgment cannot be entered in favor of Defendants on the copyright claims.

### 3. Defendants Are Not Entitled to Summary Judgment on Other Aspects of the Copyright Claims.

#### a. *Evidence of Copying of Source Code by Defendants.*

RCO further alleges that Defendants violated the Copyright Act by copying its source code. Evidence of Defendants' copying of RCO's source code was destroyed when CSE's CEO willfully destroyed RCO's hard drives containing the source code. If the Court grants summary judgment in favor of RCO on its spoliation claim or even if the Court finds there to be genuine issues of fact as to that claim, the Court cannot grant summary in favor of the Defendants on this claim.

#### b. *Evidence of Copying of the RCO-1 Software Product by Defendants.*

RCO additionally maintains its claim that the CUDP data processing software is the result of copying the RCO software. RCO has presented direct evidence that the Defendants engaged in an elaborate multi-year effort to copy aspects of the RCO-1 software. Specifically, CUI's programmers accessed the RCO software multiple times per week while engaged in their

8

development work. Akin Dep. I at 65-66. CUI's programmers met with the RCO users at CSE to ask them about the features of the program that should be transferred to the "new" CUI product. Akin Dep. I at 84. CSE even provided CUI with one of their tellers, who was very experienced with the RCO system, to design the CUI interface. Deposition of Jay Lash at 14-16 (hereinafter "Lash Dep. at __.").[8] Akin interviewed Lash, asking him what he liked about the RCO system. Akin Dep. I at 102. After Lash told Akin that as a teller for CSE using the RCO system, he liked RCO's interface, Lash ultimately became a CUI employee and was charged with personally designing the entire interface for the CUI software. Akin Dep. I at 102; Lash Dep. at 14. CUI's goal was to take the RCO system and improve it, make it better. Akin Dep. I at 103. CUI was not making its own software; they were making an enhanced version of the RCO software.

The result of this effort was a product that users experienced in the RCO system could pick up and use "seamlessly" without training. Deposition of Tracie Rodriguez at 34, 36. CUI also admits that its software was released piece by piece in modules. The modules were designed to work side by side with the RCO system at CSE before other modules of the CUI software ultimately replaced all pieces of the RCO software at CSE. Akin Dep. II at 50-51. Because the CUI software was admittedly designed to work with the RCO system, similarities and overlaps are to be expected. Additional evidence of Defendants' efforts to access and copy the RCO software was destroyed by CSE.

To prove that the CUDP software is the result of copying the RCO software, RCO can rely upon this direct evidence of copying to prove its infringement. Rogers v. Koons, 960 F.2d 301, 307 (2d Cir. 1992). In Rogers, there was evidence that the defendant set out to copy the

---

[8] Cited to pages from the Deposition of Jay Lash were submitted as Exhibit E to Plaintiff's Partial Motion for Summary Judgment.

protected work.  Id.  This evidence resulted in the court granting summary judgment in favor of the plaintiff, finding that no reasonable jury could conclude that no copying occurred.  Id.  Even if the Court does not grant summary judgment in favor of RCO on this claim, the record contains sufficient direct evidence from which a reasonable jury could conclude that the CUDP software was the result of copying the RCO software.[9]

        c. *Evidence of Substantial Similarities*

Defendants have moved for summary judgment on the grounds that no evidence of similarity exists.  See Defendants' Joint Motion at p. 7.  RCO's response to this is multi-faceted.  First, the question of similarity is only relevant if RCO lacks direct evidence of copying.  In many cases, plaintiffs lack direct evidence of copying by the defendant.  In those cases, the owner of a copyright may prove copying by demonstrating (1) access by defendants to the copyrighted work and (2) substantial similarity between the two works.  Ellis v. Diffie, 177 F.3d 503, 506 (6th Cir. 1999).  Plaintiff can proceed on this alternative theory as well.[10]  However, because RCO has direct evidence of copying, RCO need not produce evidence of substantial similarity to avoid summary judgment.

Furthermore, Defendants have opposed the deposition of their own expert who, if deposed, would testify to similarities between the two software products.  Under Rule 26(b)(4)(A), RCO is entitled to that deposition.  RCO has also filed a Rule 56(f) Motion seeking the ability to supplement this Opposition with testimony obtained from Mr. Minch.  This testimony will focus on the similarities between the two products.

---

[9] While Defendants may attempt to explain away this conduct as legitimate, at this stage the Court must draw reasonable inferences in favor of RCO.  Certainly, a reasonable jury could conclude, based upon this evidence, that Defendants copied the RCO-1 software.

[10] Defendants admittedly had "access" to the RCO software throughout their development project.  RCO acknowledges a dispute of fact on whether the two software products are substantially similar.

RCO has additional evidence of similarities that preclude the granting of summary judgment. Specifically, the attached Declaration of Robert Reid identifies twenty-seven (27) distinct similarities between the RCO and CUI software products.[11]  Defendants contend that no evidence of similarities exists. Clearly there is a dispute of fact on this point. Plaintiff acknowledges that Reid's expert opinion, concluding that these similarities were the result of copying by Defendants, has been stricken by the Court. Accordingly, Reid's Declaration includes no opinion testimony. His testimony is limited to that of a fact witness. In a case such as this, expert testimony is neither required nor always permitted. Computer Assocs. Intl. v. Altai, 982 F. 2d 693, 713 (2d Cir. 1992).

The similarities identified by Reid include characteristics protected from copying by the Copyright Act. Kohus, 328 F. 3d at 856-57. Under the abstraction/filtration approach described in Altai and Kohus, non-copyrightable components of a software product are filtered out. Once non-copyrightable components are filtered out, the trier of fact will compare the remaining components when determining if there is substantial similarity. Considering the similarities identified by Reid (and that are expected to be identified by Minch), RCO has demonstrated similarities sufficient to avoid summary judgment.

First, RCO does not contend that the processes of the RCO program itself are protected. The processes the software completes (i.e., compounding interest) are not protected. However, the manner those processes are expressed is protectable. Altai, 982 F. 2d at 704-05. In this case, both software products perform many of the same processes. The fact that both products calculate account balances is not indicative of infringement. However, RCO has identified similarities involving the way those processes are expressed. In particular, there are number of instances in which the programs have duplicate functions and fields, using the same numbering

---

[11] The Declaration of Robert Reid is attached hereto as Exhibit B.

or layouts. Reid Declaration at ¶ 6. In several instances, the commands and sequences of commands and inputs are replicated in the CUDP software. Id. These elements are protectable and should not be filtered out. Mittel Inc. v. Iqtel, 124 F. 3d 1366 (10th Cir. 1997).

Defendants claim that any similarities are the result of external factors such as regulations or accounting standards applicable to credit unions. Factors like this are not protected by the copyright laws. Mfrs. Techs. Inc. v. Structural Software, 706 F. Supp. 984, 995 (D. Conn. 1989). However, even filtering out similarities attributable to such factors, substantial similarities remain. For instance, the CUDP software adopts RCO's account numbering format, as well as its formula for identifying sub-accounts. Loans are coded with numbers 0 through 49, while savings accounts are coded with the numbers 50-99. Reid Decl. at p. 6. A programmer could code these fields in any manner he chose; Defendants have identified no regulation requiring this manner of interconnecting accounts and sub-accounts. That CUDP chose to copy this aspect of the RCO system is indeed convincing evidence of copying. It also explains how CSE's employees found the transition to the CUDP to be "seamless."

Once the non-protected elements are filtered out, the trier of fact will be asked to compare the two software products to determine if they are similar. Altai, 982 F. 2d at 710. The test for similarity is one in which the fact finder looks through the eyes of an "ordinary observer" or "lay observer." Kohus, 328 F. 3d 856-57. In this case, RCO has presented evidence of similarities between the two products such that summary judgment is not appropriate. Ultimately, the only way to effectively compare the software is to present the software itself to the jury and allow them to make a determination on the issue of similarity.

Upon obtaining Minch's deposition, Plaintiff will submit a complete response to Defendants' argument regarding the "substantial similarity" between the two software products.

However, in the meantime, RCO has presented sufficient direct evidence that Defendants copied the RCO software upon which the Court can independently deny Defendants' Joint Motion for Summary Judgment. Even if the Court does not grant summary judgment in favor of RCO on this claim, RCO has certainly presented sufficient evidence that Defendants copied RCO's software as to warrant a trial on the question.

### D.  **Defendants Are Not Entitled to Summary Judgment on The Trade Secrets Claims.**

RCO has two trade secrets at issue in this case: RCO's end user software and its source code. Defendants argue that neither the source code nor end user product can be considered trade secrets under Ohio law. A "trade secret " is information that satisfies both of the following:

> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable *by proper means by, other persons who can obtain economic value from its disclosure or use*.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.C. § 1333.61(D) (emphasis added). "Misappropriation" is defined as:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;
>
> (2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:
>
> (a) Used improper means to acquire knowledge of the trade secret;
>
> (b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or

13

>through a person who owed a duty to the person seeking relief to
>maintain its secrecy or limit its use;

See R.C. § 1333.61(B). RCO has presented sufficient evidence in support of its misappropriation of trade secrets claims to avoid summary judgment on both aspects of its claims. "The existence of a trade secret is normally a question of fact to be determined under all the circumstances by the trier of fact." Valco Cincinnati, Inc. v. N & D Machining Service, Inc. 24 Ohio St.3d 41, 47 (1986).

1. Defendants Misappropriated RCO's Software.

A trade secret need not be a secret to all, it merely needs to be "not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." R.C. § 1333.61(D). Just like CUI does, RCO provides its client credit unions with access to its software via license agreements. Kambeitz Aff. at ¶ 7. RCO's credit union clients are not competitors and therefore cannot "obtain economic value" from disclosure of RCO's software.

CUI claims that RCO authorized them as a third party PC support service provider to have access to the RCO software. To the contrary, RCO never authorized CUI's access.[12] Kambeitz Aff. at ¶ 7; Radcliff Aff. at ¶ 6; Akin Aff. at ¶ 4. In addition to being contradicted by RCO's witnesses, Defendants' trade secret argument is contradicted by their own witness. Thomas Burkhardt testified that to provide these services to CSE, CUI did not need usernames and passwords to access RCO's software. Burkhardt Dep. at 110-111. Thus, witnesses have testified that CUI, as a PC support firm, had no need or authority to use the RCO software.

RCO employs the same type of precautions as does CUI in protecting its software, limiting access to its software to its own employees and credit union customers. Kambeitz Aff.

---

[12] Had Defendants believed that CUI's access to the RCO software was appropriate, they would not have made such extensive efforts to hide their conduct from RCO. See Plaintiff's Partial Motion for Summary Judgment at p. 12-14.

at ¶ 7.[13] The Court has already ruled that CUI's data processing software is entitled to trade secret protection. (Doc. 30 at p. 8.) RCO's software is entitled to the same protection. See also, ALTA Analytics Inc. v. Muuss, 75 F. Supp. 2d 773, 785 (S.D. Ohio 1999)(holding that plaintiff's software design and technology constitute protectable trade secrets under Ohio law).

Defendants admittedly knew that RCO would not condone their conduct. CUI's primary programmer admitted that he would not permit a competitor to do to CUI what CUI did to RCO. Akin Dep. I at 106-107. Akin admitted that having the opportunity to view the layout of a program would be valuable to a competing data processor. Akin Dep. I at 112.

### 2. Defendants Misappropriated RCO's Source Code.

RCO affords greater protection to its source code than it does its end user software. While it is stored on the RCO owned server, the source code is not accessible to RCO's customers. Specialized knowledge is required to access the source code. Defendants obtained this knowledge when CSE hired Kathy Tampian from RCO.

Representatives of both CUI and RCO testified that they consider their source codes to be trade secrets. Radcliff Dep. II at 17; Akin Dep. I. at 107. Defendants contend that RCO did not utilize reasonable precautions to protect its source code because it was theoretically accessible to RCO customers. However, there is no evidence that any RCO customer or third party ever accessed RCO's source code. RCO's precautions are "reasonable" because they operated for thirty years without any unauthorized access. Certainly, Defendants cannot point to their own improper access as evidence that RCO's precautions were inadequate. To so find would be to render the trade secrets act meaningless as any violator would be able to defend on the grounds

---

[13] In addition, RCO's employees and contractors are required to sign confidentiality agreements before they gain access to RCO's confidential materials. See Exhibit C.

that the plaintiff should have taken more vigilant steps to prevent them from stealing their trade secrets.

Defendants' only other argument is that RCO somehow forfeited trade secret protection for its source code by filing a small portion of it with the Copyright Office in order to obtain copyright protection for the source code. Defendants argue that by seeking added protections under the Copyright Act, RCO forfeits its protections under Ohio law. This is illogical and not the law of Ohio. Murray v. Bank One, 64 Ohio App.3d 784, 792-93 (Franklin Cty. 1990)(filing of system with Copyright Office does not defeat trade secrets claim). In complying with the requirements of the Copyright Act to protect its software, RCO sought additional protection for its software. Defendants' Motion for Summary Judgment cannot be granted under these facts.

Finally, evidence that Defendants accessed and copied RCO's source code was destroyed when CSE spoliated RCO's hard drives. With the pending spoliation claim, the Court cannot grant summary judgment in favor of Defendants because of Plaintiff's inability to produce the spoliated evidence. To so find would be to reward their unlawful conduct. Defendants' Joint Motion should be denied.

**E.** **Defendants Are Not Entitled to Summary Judgment on The Tortious Interference Claims.**

From 2005 through the present, six credit unions who were under contract with RCO left RCO to becomes customers of CUI. See Deposition of Stephen J. Kambeitz at pp. 22-23, 26; Deposition of Tom Lieb at pp. 33-34.[14] Those credit unions were established customers of RCO. RCO's claim for tortious interference survived summary judgment because there is evidence that Defendants wrongfully induced these credit unions to terminate their contractual or business relationships with RCO. Defendants' defense is that their conduct is simply "fair competition."

---

[14] The cited to pages to the depositions of Stephen Kambeitz and Tom Lieb are attached respectively as Exhibits F and G to Defendants' Joint Motion for Summary Judgment. (Doc. 101).

16

See Defendants' Joint Motion at p. 19.  Obviously, RCO's position is that Defendants' competition was anything but fair.  As RCO has several viable claims against Defendants, summary judgment cannot be granted on the tortious interference claims.  If RCO were to prevail on any of its other claims, Defendants' competition would be wrongful and their interference with RCO's existing relationships would be tortious.  "To determine whether defendant's conduct is improper or privileged, Ohio courts look to the nature of the actor's conduct, motive, interests interfered with, interests of the actor, societal interests, remoteness of the interference, and the relationship of the parties.  Prosonic Corp. v. Stafford, 539 F.Supp.2d 999, 1006 (S.D. Ohio 2008).  RCO has presented sufficient evidence upon which a jury could apply the above standard and find that Defendants' conduct was wrongful and not the type of "fair competition" protected by law.

The evidence indicates that Defendants have specifically targeted RCO's business relationships as opposed to competing in the broad data processing market.  Since creating their CUDP software product in 2005, Defendants have not sold it to any credit unions other than RCO customers.  Defendants' business plan is not one of fair competition.  Defendants took RCO's property, created a similar product and have marketed that product in a targeted way to RCO's customer base.

      **F.**    **Defendants Are Not Entitled to Summary Judgment on the DMCA Claim.**

In their Joint Motion, Defendants argue that the DMCA claim fails because RCO "authorized CSE to create usernames/passwords" so that its employees and support personnel could access the RCO system.  See Joint Motion at 15.  As detailed above, RCO did not authorize CSE to provide CUI and its programmers access to the RCO system.  See *supra*.  There is at the very least a dispute of fact as to the scope of CSE's authority.

17

Defendants rely upon <u>I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information Systems, Inc.</u>, 307 F.Supp.2d 521 (S.D.N.Y. 2004) to argue that they did not circumvent RCO's password requirement because they simply created and used a username and password without authority. CUI's defense to the DMCA claim is that they relied upon CSE's misconduct to bypass RCO's password requirement and did not therefore need to bypass the requirement themselves. Because CSE destroyed the evidence that would have shown how and when they gained access to the RCO system, Defendants ask the Court to assume that no other means were utilized.

### G. **CUI, Software Properties and Burkhardt Have Been Unjustly Enriched.**

The elements that must be proven in a claim for unjust enrichment are: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. <u>Hambleton v. R.G. Barry Corp.</u>, 12 Ohio St.3d 179 (1984)(<u>citing</u> <u>Hummel v. Hummel</u>, 133 Ohio St. 520, 525 (1938)). In this case, CUI admittedly benefited from more than two years of free and unfettered use of Plaintiff's software package to further their development efforts. Akin Dep. I at 112. Defendants plainly knew that and took advantage of the value of this software. As an aspiring software company, Defendants certainly would have know that software is not given away. It would be unfair for Defendants to benefit from this use of the RCO software without payment.

## IV. CONCLUSION

Plaintiff RCO has established facts upon which a jury could find in its favor on its claims. Defendants inappropriately ask the Court to ignore evidence inconsistent with their case and to draw inferences in their favor on circumstantial or ambiguous evidence. At this stage, the Court

must draw such inferences in favor of RCO.  Applying the summary judgment standard in the context of the extensive record in this case, summary judgment is not warranted.  Defendants' Motion should be denied.

>Respectfully submitted,
>
>/s/ Daniel J. Clark
>David A. Campbell (0066494)
>Daniel J. Clark (0075125)
>Vorys, Sater, Seymour and Pease LLP
>2100 One Cleveland Center
>1375 East Ninth St.
>Cleveland, Ohio 44114-1724
>Telephone:  216-479-6168
>Facsimile:  216-937-3779
>E-mail: dacampbell@vssp.com
>         djclark@vssp.com
>
>*Attorneys for Plaintiff R.C. Olmstead, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was sent via the Court's electronic filing system to all parties of record, listed below, with the Court on the date of filing.  Notice of this filing will be served to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Andrew Holford
1650 Lake Shore Dr.
Suite 180
Columbus, Ohio 4320

George H. Carr
Gallagher Sharp
Bulkley Bldg., 6th Floor
1501 Euclid Avenue
Cleveland, OH 44115
216-241-5310
Fax: 216-241-1608
gcarr@gallaghersharp.com


                                        /s/ Daniel J. Clark
                                        Daniel J. Clark

10473638