# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| R.C. OLMSTEAD, INC., | ) | CASE NO. 5:08CV234 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| CU INTERFACE, LLC, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court is defendants' renewed application for fees and costs under 17 U.S.C. § 505 and O.R.C. §1333.64 and for sanctions under 28 U.S.C. § 1927.[1] (Doc. No. 167.)[2] Plaintiff has filed a memorandum in opposition (Doc. No. 170)[3] and defendants filed a reply (Doc. No. 171). With leave of Court, plaintiffs filed a sur-reply (Doc. No. 176) and defendants filed a sur-sur-reply (Doc. No. 177). For the reasons and to the extent discussed below, the motion is **GRANTED IN PART**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 29, 2008, plaintiff R.C. Olmstead, Inc. ("RCO") filed a complaint against defendants CU Interface LLC ("CUI"), Thomas Burkhart ("Burkhart") and Canton School Employees Federal Credit Union ("CSE") alleging misappropriation of trade secrets, tortious interference with contractual and business relationships, copyright infringement,

---

[1] Defendants CU Interface, LLC, Software Properties, LLC and Thomas Burkhart have joined in this motion.

[2] Defendant also incorporates its original application and reply. (Doc. Nos. 158, 161.)

[3] Plaintiff also incorporates its opposition to the original motion. (Doc. No. 160.)

violations of the Digital Millennium Copyright Act, contributory copyright infringement, unjust enrichment, spoliation, and breach of contract. (Doc. No. 1.)[4] Plaintiff alleged that its credit union software program RCO-1 was infringed and/or misappropriated by CUI, which developed a competing software program known as Circa 2005 CUDP.

The parties engaged in rather contentious discovery, culminating in cross-motions for summary judgment. On February 23, 2009, plaintiff and CSE settled and CSE was dismissed. On March 27, 2009, after having previously stricken from the record the report of plaintiff's only expert, Robert Reid (*see* Doc. No. 75, dated 11/7/08), the Court denied plaintiff's motion for partial summary judgment and granted the remaining defendants' motion for summary judgment, closing the case. (Doc. Nos. 155, 156.) This decision was upheld on appeal, along with the decision to strike Reid's expert report for failure to comply with the requirements of Fed.R.Civ.P. 26(a)(2)(B). (*See* Doc. Nos. 163, 166.)

Defendants then filed the instant renewed motion for fees, costs and sanctions.[5]

## II. DISCUSSION

**A.     Controlling Law**

Fed.R.Civ.P. 54(d)(1) provides that "costs -- other than attorney's fees -- should be allowed to the prevailing party."[6] Under the Rule, any claim for attorney's fees must be made by motion "filed no later than 14 days after the entry of judgment." Rule 54(d)(2).[7]

---

[4] The complaint was amended on November 13, 2008. (Doc. No. 77.)

[5] Defendants had first filed a motion for attorney fees and costs on April 9, 2009. (Doc. No. 158.) That motion was fully briefed; however, on May 14, 2009, the Court dismissed the motion without prejudice to renewal after adjudication of the appeal. (*See*, Doc. No. 162.)

[6] Although the Rule permits the Clerk to tax costs, defendants did not file a bill of costs but chose instead to incorporate their cost request into the instant motion.

Under 17 U.S.C. § 505, costs may be awarded to any party; attorney's fees, in the court's discretion, may also be awarded to the prevailing party. In exercising this discretion, courts consider such factors as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986). In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 (1994), the Supreme Court approved such factors "to guide courts' discretion, so long as [they] are faithful to the purposes of the Copyright Act[.]"

O.R.C. § 1333.64 permits an award of attorney's fees to the prevailing party if "[a] claim of misappropriation is made in bad faith."

An attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

**B.    Analysis**

    **1.    Entitlement to Costs and Attorney's Fees**

Relying on arguments made in its initial application for attorney's fees and costs, CUI[8] seeks to recover based on the fact that this Court ruled against RCO on summary judgment and, further, "found much of Plaintiff RCO's strategy within this case to be without merit." (Doc. No. 167, at 1; Doc. No. 158, at 9, citing docket references.) CUI argues: "By failing to

---

[7] Defendants' original motion was timely filed within 14 days of the entry of judgment. It sought only costs and attorney's fees. By order dated June 1, 2010, this Court granted defendants leave to renew the motion until 30 days after the appeal was resolved, including a pending petition for en banc hearing. That petition was denied on June 23, 2010. The renewed motion was filed on July 23, 2010. It sought costs, attorney's fees, and sanctions.

[8] Although the motion is joined by the three remaining defendants, for ease of reference throughout this opinion, the Court will refer only to CUI.

identify their claims, weaving claims of spoliation throughout the entire case against CUI, ignoring deadlines and constantly seeking extensions, Plaintiff RCO showed this court its true colors: a vexatious case pursued to destroy a much smaller competitor. The entire case revolved around allegations of copyright infringement where no supportable claim existed." (Doc. No. 158, at 9-10.)

    a.  17 U.S.C. § 505 and O.R.C. §1333.64

In exercising its discretion with respect to an award of attorney's fees under 17 U.S.C. § 505, this Court looks to factors such as "frivolousness, motivation, [and] objective unreasonableness." *Fogerty*, *supra*. To award attorney's fees under O.R.C. § 1333.64, there must be a finding that a misappropriation claim was brought in bad faith.

CUI is of the opinion that this lawsuit was frivolous even before its inception and was motivated by plaintiff's desire to crush a smaller competitor. It points to a litany of events throughout the course of discovery when RCO purportedly refused to obey court orders, purposely waited until the last minute to seek extensions of time just to delay the proceedings, manufactured discovery disputes, and failed to identify the nature of its copyright claim (in particular what, if anything, it claimed as original, protectable material). It asserts that RCO "repeatedly drank from the well of alleged spoliation[,]" and moved for summary judgment on this issue, despite the lack of any evidence that CUI was involved in any spoliation. (Doc. No. 167, at 10-11.) CUI believes that RSO's counsel never sought to compare the source codes of the parties' competing products because he preferred to "spin [a] web of confusion on this topic" and did not want to "deflate[ ] their phony claims of spoliation against CUI." (*Id*. at 11.) CUI asserts that RCO "embarked on a speculative course to depose CUI's non-testifying expert witness to 'discover' what their claims might be, if any." (*Id*.) Finally, it points to this Court's own

comment that plaintiff's summary judgment practice was "highly disingenuous" (*id*., quoting Doc. No. 155, at 17, note 3),[9] and to plaintiff's motion for reconsideration of "a months old ruling as to the protection afforded to Circa 2005 CUDP." (*Id*.) CUI concludes that "[t]he only explanation for this vexatious conduct is malice." (*Id*.)

With respect to RCO's trade secret claim, CUI argues that "counsel's conduct [was] abhorrent." (*Id*. at 12.) CUI makes this assertion on the basis of its belief that, although RCO had to have known as early as the summer of 2007 that it had no viable trade secret claim, it nonetheless refiled a case it had dismissed in state court and pursued this claim for over a year, moving for summary judgment on this claim and even pursuing it on appeal.

CUI argues that "[t]he only explanation for this conduct is bad faith combined with an ulterior motive to destroy CUI by attempting to bury them [sic] in a federal lawsuit or extort a settlement." (*Id*. at 12.) Although this is one possible explanation for the litany of conduct that CUI has identified, it is not the only explanation, especially with respect to the copyright claim. Although RCO did not ultimately prevail on that claim, that result came about largely because it chose to use an expert whose report was stricken because it did not comply with the requirements of Rule 26, leaving RCO with a complete inability to meet its burden of proof. Although CUI believes the copyright claim was frivolous from its inception, this Court cannot say for certain that RCO could never have prevailed, even if it had a better expert.

It does appear that RCO may have brought its trade secret claim in bad faith since, even by its own president's admission, its product was not a trade secret and had not been protected as one. Even so, since the Court is unwilling to declare that the entire lawsuit was

---

[9] That remark by the Court was really made only with respect to RCO's claim of "direct evidence" of copyright infringement.

frivolous or brought in bad faith, the presence of the trade secret claim among the several claims, even if it was a frivolous claim, cannot be said to have been so significant to the course of proceedings that, absent the single trade secret claim, the proceedings would have been very different. Given that there were other claims and all of them were related factually, with or without the trade secret claim, this matter would have been litigated.

That said, even though this Court is hesitant to declare the lawsuit frivolous or in bad faith from its inception, the situation changed in a significant way during the course of the proceedings, requiring this Court to now examine the "objective unreasonableness" factor.

On November 7, 2008, this Court ruled, in an opinion that has since been upheld on appeal, that plaintiff's expert report was not compliant with the requirements of Rule 26 and was, therefore, entirely barred. At that point, expert discovery was already over and plaintiff was left without an expert in a case that is expert-dependent from a standpoint of proof. Even so, plaintiff forged onward, certainly knowing that it was going to be impossible to satisfy its burden of proof. As it turned out, on March 27, 2009, this Court granted summary judgment in favor of CUI.[10]

In light of the fact that plaintiff proceeded to litigate thereafter even knowing that it would be unable, without an expert, to prove its claims,[11] the Court concludes that, after November 7, 2008, prosecuting this lawsuit was objectively unreasonable, even if one could not fault RCO for *bringing* the lawsuit in the first place. *See Atlantic Recording Corp. v. Andersen*,

---

[10] Shortly before, on March 24, 2009, all claims against CSE were dismissed upon the parties' stipulation that they had reached a settlement. (Doc. No. 152.)

[11] RCO holds the view that CUI's co-defendant's destruction of evidence severely hampered its ability to conduct a forensic review of the software to determine whether CUI had improperly accessed RCO's access code. (Doc. No. 170, at 2.) However, this Court previously decided that CUI could not be held liable for CSE's spoliation of evidence (*see* Doc. No. 155, at 8-12), and that decision was upheld on appeal.

No. CV05-933-AS, 2008 WL 185806, at * 6, n.1 (D.Or. Jan. 16, 2008) ("courts have recognized that a case, while not frivolous when filed, may become so in the course of discovery") (citing cases); *Oravec v. Sunny Isles Luxury Ventures, L.C.*, No. 04-22780-CIV, 2010 WL 1302914, at * 5 (S.D. Fla. Mar. 31, 2010) ("[u]nder the third *Fogerty* factor, the Court must assess the objective reasonableness of Plaintiff's claims throughout the course of the litigation.").[12]

Therefore, in these particular circumstances, the Court concludes that CUI is entitled to recover something by way of attorney's fees and costs (not including any time before November 7, 2008), "to advance considerations of compensation and deterrence." *Fogerty, supra*.

The Court must also separately consider whether it is appropriate to award any attorney's fees or costs for appellate work. The same factors must be considered: frivolousness, motivation, objective unreasonableness, compensation, and deterrence.

As already noted, even though RCO had virtually no chance of prevailing on its copyright claim without an expert or on its trade secret claim because its own evidence showed that it had done nothing to protect its software as such, it continued to pursue the case all the way through summary judgment, where this Court ruled in defendants' favor. There came a point in this litigation when RCO needed to simply recognize the deficiencies of its case. It passed up the opportunity after November 7, 2008 and it did so again when it decided to exercise its admitted right to appeal. Rather than simply honestly face the deficiencies, RCO pressed on, with the result on appeal being the very same as before this Court.

---

[12] The Southern District of Florida rejected its plaintiff's assertion that objective reasonableness should only be judged from the date the suit commenced, finding that, if that were the test, "the 'objective unreasonableness' and 'frivolousness' determinations would effectively conflate into a single test, as both determinations would focus solely on Plaintiff's claims at the commencement of the litigation." 2010 WL 1302914, at *5.

The original motion for attorney's fees and costs was filed a mere week after the notice of appeal; therefore, RCO knew early on in the appeal process that CUI intended to pursue its attorney's fees. In light of the fact that 17 U.S.C. § 505 permits an award of attorney's fees to a prevailing party, any appeal was surely taken with the full knowledge that this Court's rulings could be upheld and that CUI would, therefore, ultimately be the prevailing party.

The Court finds that it was objectively unreasonable for RCO to pursue an appeal under these circumstances and, in doing so, it simply multiplied the proceedings and increased the costs for CUI. Therefore, CUI is entitled to recover its attorney's fees that can be attributed to the appeal itself, including the petition for *en banc* rehearing.[13]

In summary, the Court will award attorney's fees and costs to CUI under 17 U.S.C. § 505 for the time period between November 8, 2008 and March 27, 2009, inclusive; for hours devoted to the appeal and the petition for rehearing *en banc*, but not for any time spent on mediation; and for hours devoted to the original motion for fees and costs and the renewed motion for fees and costs.

**b.     28 U.S.C. § 1927**

CUI has also moved for sanctions under 28 U.S.C. §1927. As pointed out by RCO, this aspect of the instant motion is new; it was not included in the original motion although it certainly could have been because it is based at least in part on conduct that occurred before this Court issued its summary judgment ruling. The Sixth Circuit has ruled, however, that a motion under § 1927 is not untimely even if made after the final judgment in a case. *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997). In fact, some courts conclude that, since §

---

[13] During the course of the appeal, the parties engaged in mediation. Hours devoted to those proceedings will not be awarded as part of the attorney's fees because the Court does not believe that RCO should be penalized for participating in mediation.

1927 is designed to require that counsel who engage in unreasonable and vexatious conduct pay "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct[,]" such a determination cannot be made until all the proceedings, including an appeal, are complete. *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 102 (3rd Cir. 2008).

In this case, even if the Court were to assume for the sake of argument that RCO engaged in unreasonable and vexatious conduct (and the Court need not so conclude although, admittedly, it had concerns about some of RCO's tactics and about the trade secret claim), CUI's motion does not identify any "excess" fees or costs incurred as a result of any particular behaviors of RCO. CUI's fundamental argument is really that it should be able to recover its fees and costs simply because it should never have had to incur them in the first place. That is a different matter than the narrow focus of § 1927, which is designed "to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). "Thus, an attorney is sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Id.*

Although its renewed motion lists a litany of "instances of bad faith, unreasonableness, and improper purpose" (Doc. No. 167, at 9), CUI fails to link any of these actions to its billing statements to illustrate how it was forced to perform services that were in "excess" of ordinary litigation services. This Court has no duty to independently comb through the records to try to make this correlation.

The Court concludes that sanctions under § 1927 are not warranted.

### 2. The Amount of Attorney's Fees and Costs to be Awarded

Having concluded that some amount of attorney's fees should be awarded as part of costs under 17 U.S.C. § 505, the Court now turns to a determination of the amount.

"Reasonable attorney's fee awards are determined by the fee applicant's 'lodestar,' calculated by multiplying the proven number of hours worked by a court-ascertained reasonable hourly rate." *Ellison v. Balinski*, 625 F.3d 953, 960 (6th Cir. 2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

CUI asks this Court to set a reasonable hourly rate based on information it has provided, including various affidavits and its counsel's actual billing rates, which varied depending on the time period. CUI asserts that a reasonable rate has been found to be as high as $330/hour and suggests that this Court should select a rate between $195 and $325. Plaintiff has not raised any challenge to the hourly rate; rather, it has challenged only the number of hours spent and some of the services rendered.

CUI's lead counsel, Andrew M. Holford, filed an affidavit wherein he noted that early in his representation of CUI the firm he worked for charged CUI $195/hour. After Mr. Holford established his own practice, he reduced his hourly rate to $165 "in recognition of the significant drain of resources on CUI and the fees expected to accumulate as discovery and dispositive motion practice continued to evolve." (Doc. No. 167-1, ¶¶ 17, 20.) Although his rate for new matters was $205/hour, when CUI asked him to handle the appeal, he set his rate at $195. (*Id.*, ¶¶ 21, 26.)

Attorney George H. Carr represented CSE in this case and worked closely with Mr. Holford. He filed an affidavit (Doc. No. 167-2) attesting that in this region, "hourly rates of $275 to $300 for similar work are reasonable[.]" (*Id.*, ¶ 4.) Likewise, another co-counsel for

CSE, Robert J. Tscholl, attested that, in his view, Mr. Holford's hourly rate was "substantially below what it should [have been] for his general and technical expertise in this case." (Doc. No. 167-4, ¶ 9.) Mr. Tscholl stated that his own hourly rate for this litigation was $225 and he "could not hold a candle to Attorney Holford's expertise in this case." (*Id.*, ¶ 10.)

Attorney Mark H. Ludwig also filed an affidavit in support of CUI's motion. It indicates that he is an experienced trial and appellate attorney who has been admitted to practice since 1974. He examined the work done by Mr. Holford in defending RCO's appeal to the Sixth Circuit. In his view, the rate of $195/hour and the time spent were both reasonable and necessary. In fact, he believes that he would have requested a rate of $250 or more for the same services and is aware that other lawyers might have charged $350/hour. (Doc. No. 167-3, ¶ 5.)

In light of the above, the Court concludes that, although Mr. Holford never charged CUI more than $195, and at times only charged $165,[14] his services in this particular case were worth much more than he charged, not only because of the complexity of the subject matter and the contentiousness of the litigation but also because he prevailed both in this Court and on appeal. RCO should not be permitted to reap the benefits of Mr. Holford's generosity to a longtime client. Therefore, the Court will award fees at the reasonable rate of $225/hour.

Mr. Holford submitted his billing records along with CUI's reply brief.[15] Many of the records cover time periods before November 7, 2008, the date which this Court has chosen as an appropriate starting date for consideration of fees. Therefore, none of those records will be

---

[14] Fee arrangements between an attorney and his client do not limit the fee award; the Court must determine what a reasonable fee would be notwithstanding any fee arrangement. *Studio A Entertainment, Inc. v. Action DVD*, 658 F.Supp.2d 851, 858 (N.D. Ohio 2009) (citing cases).

[15] By Order dated November 3, 2010, this Court ruled that it would consider these records even though they were first submitted with the reply brief. *See* Doc. No. 175. Plaintiff was granted leave to file a sur-reply to respond to the reasonableness of the proposed hours, having already had an opportunity to address the reasonableness of the hourly rates and costs proposed by CUI.

considered. (*See* Doc. No. 171-1; 171-2, pp. 1-17.) The Court will consider only hours for services performed after November 7, 2008, for services relating to the appeal and the *en banc* petition, and for services relating to the initial motion and the renewed motion for fees and costs. (*See* Doc. No. 171-2, pp. 17-34; 171-3; 171-4.)

Having examined the billing records of Attorney Holford, the Court will grant the following:

- 11/10/08 thru 3/27/09 = 234.75 hrs. @ $225/hour for a total of $52,818.75;[16]

- Motion/Renewed Motion = 32.3 hrs. @ $225/hour for a total of $7,267.50;[17]

- Appeal = 120.2 hrs. @ $225/hour for a total of $27,045.00;[18] and

- *En Banc* Petition = 2.6 hrs. @ $225/hour for a total of $585.00.[19]

This brings the total attorney's fees to **$87,716.25**.

Turning to the costs, under Rule 54(d), "costs -- other than attorney's fees -- should be awarded to the prevailing party." Title 28, Section 1920 provides as follows:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1)  Fees of the clerk and marshal;
> (2)  Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

---

[16] The Court considered all entries in Doc. No. 171-2, beginning at 11/10/08 and ending on 3/27/09.

[17] The Court considered the entries dated 3/29/09, 3/31/09, 4/1/09, 4/2/09, 4/3/09, 4/6/09, 4/7/09, 4/8/09, 4/9/09 (Doc. No. 171-2, pp. 32-34); 4/28/09, 4/29/09, 5/6/09, 5/14/09 (Doc. No. 171-3, pp. 1-2); 5/20/10, 5/25/10, 5/26/10, 5/27/10, 5/28/10 (2 hours only) (*id.*, pp. 20-21); 7/15/10, 7/22/10, 7/23/10 (Doc. No. 171-4, pp. 2-3). Because these entries all contain some services other than those relating to the motion and renewed motion, the Court credited only 2/3 of the hours (i.e., 48.95 hrs. x .66 = 32.3 hours).

[18] The Court considered the entries dated 4/10/09 (Doc. No. 171-2, p. 34); 4/24/09, 4/30/09, 5/1/09, 5/4/09 (Doc. No. 171-3, pp. 1-2); 6/30/09 (*id.*, p. 6); all entries dated 7/18/09 through 7/31/09 (*id.*, pp. 8-10); all entries dated 8/3/09 through 9/18/09 (*id.*, pp. 11-14); all entries dated 10/16/09 through 10/19/09 (*id.*, p. 15); all entries dated 3/17/10 through 3/24/10 (*id.*, p. 17); all entries dated 4/13/10 through 4/28/10, plus 5 hours for travel time (*id.*, pp.18-19); and 5/19/10 (*id.*, p. 20).

[19] The Court considered the entries dated 5/28/10 (2.3 hours only) (Doc. No. 171-3, p. 21); 6/23/10, 7/6/10 (Doc. No. 171-4, pp. 1-2).

> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
>
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

Although 17 U.S.C. § 505 permits a party to recover its "full costs," some courts "which have considered the issue have interpreted the term 'full costs' to include only those expenditures listed in 28 U.S.C. §§ 1821 and 1920." *Fharmacy Records v. Nassar*, 729 F.Supp.2d 865, 893 (E.D. Mich. 2010) (citing *Pinkham v. Camex, Inc.,* 84 F.3d 292 (8th Cir.1996); *Artisan Contractors Ass'n of America, Inc. v. Frontier Ins. Co.,* 275 F.3d 1038 (11th Cir.2001); *Data General Corp. v. Grumman Sys. Support Corp.,* 825 F.Supp. 361 (D.Mass.1993)). However, as noted in *Fharmacy Records*, the Sixth Circuit has affirmed an award of non-taxable costs under § 505, without discussion, in *Coles v. Wonder*, 283 F.3d 798, 803 (6th Cir. 2002). *See also Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869, 885 (9th Cir. 2005) (noting the split among the circuits, but concluding that "[c]onstruing § 505 as limiting the costs that may be awarded to any particular subset of taxable costs effectively reads the word 'full' out of the statute").

There are also courts which allow costs as part of the attorney's fees awarded under federal fee-shifting statutes like 17 U.S.C. § 505. *See Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32 (1st Cir. 2006) (citing *Invessys, Inc. v. McGraw-Hill Cos.*, 369 F.3d 16, 22-23 (1st Cir. 2004) (interpreting 17 U.S.C. § 505)). In *Invessys, Inc.*, the court noted that "the Supreme Court has endorsed the view that *disbursements* made by an attorney and ordinarily billed directly to

13

the client (that is, separately from the hourly or fixed fee) can properly be encompassed within the phrase "attorney's fee[.]" *Invessys, Inc.*, 369 F.3d at 22 (citing *W.Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 87 n.3 (1991), superseded by statute on other grounds).

This Court is persuaded by both (1) the fact that the Sixth Circuit has affirmed in *Coles* costs that are not taxable under § 1920, and (2) the fact that the Supreme Court in *W.Va. Univ. Hosps., Inc.* recognized, in dicta, that disbursements billed directly to the client may be subsumed within the phrase "attorney's fees," that it is appropriate in this case to award an amount of money to CUI for its additional costs, even if they are not the specific costs allowed by § 1920. Further, there is no need to place any date restrictions on the costs (as there was with the hourly fees) because costs are awarded to the prevailing party.

Therefore, based on the billing records, the Court will award costs in the total amount of **$4,807.35**.[20]

CUI has also asked this Court to award it $9,402.75 (53.73 hours @ $175/hour) for costs associated with reconstructing the Circa 2005 CUDP system. However, CUI previously requested these same costs and the Court denied the motion. *See* Memorandum Opinion and Order, Doc. No. 52 ("CUI shall bear the total cost of producing the Circa 2005 CUDP software."). CUI has provided no reason why the Court should reconsider and it sought no such reconsideration at the time of the original ruling. Therefore, these costs are not allowed.

Finally, since 28 U.S.C. § 1961(a) permits interest "on any money judgment in a civil case recovered in a district court [...] calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield [...] for the calendar

---

[20] This is the total of $2,078.16 (Doc. No. 171-1, p. 6); $298.50 (*id.*, p. 13, eliminating Summit County Costs); $560.00 (*id.*, p. 17), $424.05 (Doc. No. 171-2, p. 10), $727.25 (*id.*, p. 15, eliminating duplicate deposition of Lori Wengerd), $450.00 (Doc. No. 171-3, p. 14), and $269.39 (*id.*, p. 19).

week preceding[,]" and since the Sixth Circuit has interpreted "any money judgment" to include an award of attorney's fees, *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 485 (6th Cir. 2001), the Court also awards post-judgment interest at the rate of 0.30 based on the week ending February 11, 2011.

### III. CONCLUSION

For the reasons set forth above, the Court will award a total of **$92,523.60** in costs and attorney's fees, plus post-judgment interest from the date of this Memorandum Opinion, to defendants CU Interface LLC, Software Properties LLC and Thomas Burkhart against plaintiff R.C. Olmstead, Inc. and the same shall be entered by separate Judgment Entry.

**IT IS SO ORDERED**.

Dated: February 16, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**